CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

1/11/2023

LAURA A. AUSTIN, CLERK
BY:  s/ CARMEN AMOS
       DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

**STEVE RUCKER, JR.,**

                    **Plaintiffs,**

**v.**                                                        Civil Action No. ___6:23CV00003___

**JONATHAN FARRAR**
**2824 Falling Creek Road**
**Bedford, Virginia 24523**

**ZACHARY MILLER**
**1107 Fairview Drive**
**Bedford, Virginia 24523**

**and**

**MICHAEL JOHNSON, JR.**
**2004 Wards Ferry Road, Apt. 24**
**Lynchburg, Virginia 24502,**

                    **Defendants.**

### COMPLAINT

COMES NOW Plaintiff Steve Rucker, Jr. ("Plaintiff" or "Rucker"), by counsel, and states as follows for his Complaint against Defendants Jonathan Farrar, Zachary Miller, and Michael Johnson, Jr., all named as defendants herein (collectively "Defendants"):

### PRELIMINARY STATEMENT

This case details precisely the kind of unfortunate and severe consequences that can result when law enforcement officers decide to use heavy-handed tactics in the performance of routine, ministerial law enforcement duties. On the evening of March 20, 2021, Lynchburg Police Department ("LPD") officers were attempting to serve Plaintiff, while he was on horseback, with a

"permitted" arrest warrant for an alleged protective order violation.[1] In the course of trying to serve such process, multiple LPD officers, including a K-9 unit, chased Plaintiff on horseback through the streets of Lynchburg, with lights and sirens blaring, and fired tasers at Plaintiff while he was riding at approximately 15 miles per hour. In addition, one LPD officer, Defendant Michael Johnson, Jr., jumped out of and abandoned his cruiser while the vehicle was still in the "drive" gear; the cruiser ran over Plaintiff resulting in severe and permanent injuries.

This action seeks remedies for Defendants' heavy-handedness under federal and state law.

## NATURE OF ACTION

1.      This is a civil action brought pursuant to 42 U.S.C. § 1983 seeking damages against Defendants for acts committed under the color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States of America.

2.      In addition, this action seeks damages against Defendants for their common law gross negligence and/or willful and wanton conduct.

## JURISDICTION AND VENUE

3.      Jurisdiction exists in this case pursuant to the Fourth and Fourteenth Amendments of the U.S. Constitution, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 1331 and 1343.

4.      This Court has pendent and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

---

[1] A "permitted" warrant means a law enforcement officer just needed to serve Plaintiff and release him on a summons. A "non-permitted" warrant, by contrast, means law enforcement needs to arrest someone, take them into custody, and process them.

5.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because the events underlying this action occurred within the jurisdiction of the United States District Court for the Western District of Virginia, Lynchburg Division.

**THE PARTIES**

6.      Plaintiff is and was at all times relevant herein a Virginia resident.

7.      Defendant Jonathan Farrar (hereinafter "Farrar") was at all times relevant herein a Virginia resident and law enforcement officer with the LPD holding the rank of Officer, and an employee, agent, and/or servant of the LPD, and acting within the course and scope of his employment, agency, and/or the LPD, and under color of law. Farrar is sued in his individual capacity.

8.      Defendant Zachary Miller (hereinafter "Miller") was at all times relevant herein a Virginia resident and law enforcement officer with the LPD holding the rank of Officer, and an employee, agent, and/or servant of the LPD, and acting within the course and scope of his employment, agency, and/or the LPD, and under color of law. Miller is sued in his individual capacity.

9.      Defendant Michael Johnson, Jr. (hereinafter "Johnson") was at all times relevant herein a Virginia resident and law enforcement officer with the LPD holding the rank of Officer, and an employee, agent, and/or servant of the LPD, and acting within the course and scope of his employment, agency, and/or the LPD, and under color of law. Johnson is sued in his individual capacity.

**STATEMENT OF FACTS**

10.     On March 20, 2021, "Sarah" with Amherst County Emergency Communications called "Bartell" with Lynchburg City Emergency Communications to advise that Rucker was on horseback and heading towards the John Lynch Memorial Bridge (also known as the "5th Street

Bridge") into the City of Lynchburg from Amherst County on horseback, and that Rucker had a "permitted" warrant out of Lynchburg for an alleged protective order violation that needed to be served upon him.[2] Lynchburg City Emergency Communications thereupon contacted the LPD "information desk" to confirm it had a copy of the process for Rucker, and then notified all law enforcement units, including Defendants herein, of Rucker's whereabouts, direction of travel, and that a "permitted" warrant for Rucker was pending.

11.     At 19:56:18 hours on March 20, 2021, Lieutenant Brian Smith ("Smith") was heading northbound on Main Street in an unmarked LPD SUV when he encountered Rucker on horseback in front of the Holiday Inn at 601 Main Street.[3] Rucker was heading the opposite direction, southbound on Main Street. Smith activated his emergency lights and gave a quick siren whelp.

12.     While still in his vehicle, Smith rolled down his window and stated "Steven! Steven! Hold up buddy." Rucker asked what Smith wanted him for, and then continued riding past the driver's side of Smith's vehicle.

13.     Smith made a U-turn in the Holiday Inn entrance and then initiated a pursuit, exclaiming on the radio: "He's not stopping. We are in pursuit of a horse." Smith thereupon activated his lights and sirens. Three more LPD vehicles that were in the immediate vicinity immediately fell in line behind Smith's vehicle and similarly activated their lights and sirens.

---

[2] See footnote 1, *supra*.

[3] All times noted herein are approximations, as there exists a substantial amount of discrepancy in the times noted across the various officers' recording devices, and as between some officers' own body worn cameras versus dashboard cameras.

14.     Smith and the other officers pursued Rucker as he made a right turn to head west on 7th Street for one block, followed by a left turn to head one block south on Church Street. Smith noted Rucker's speed at 10 miles per hour.

15.     Rucker turned left off Church Street to head eastbound on 8th Street. After one block, Rucker turned right on to Main Street.

16.     After going one block on Main Street, Rucker turned left to head eastbound on 9th Street.

17.     After going one block on 9th Street, Rucker then turned right on Commerce Street at which point Smith radioed that Rucker was "picking up speed."

18.     At 19:59:02 hours, Smith stated over the public address system in his vehicle: "Steven, this is the police department. Need you to stop the horse and get off. We *just have paperwork for you*" (emphasis added).  At 19:59:21 Smith radioed that Rucker's speed was 10 miles per hour.

19.     At 19:59:53 hours, as Rucker passed 13th Street on Commerce Street, Farrar, who had parked his cruiser on the opposite side of the street pointing northbound on Commerce Street, exited his vehicle and drew his taser. At 19:59:56 hours, Farrar stepped out into the middle of oncoming, northbound Commerce Street traffic and pointed his taser at Rucker. The below fairly and accurately depicts Farrar pointing his taser at Rucker:



Farrar then pursued Rucker on foot with his taser pointing at Rucker.

20.     At 20:00:01 hours, as Rucker rounded a right bend on Commerce Street and headed towards Main Street, Farrar radioed Smith: "Request permission to taser!" Smith responded over the radio at 20:00:06 hours: "10-4."

21.     At 20:00:12 hours, Farrar radioed again to Smith: "Repeat?!"

22.     At 20:00:14 hours, Smith responded over the radio: "10-4. If anybody can get close to him to tase him, go ahead and do it."

23.     At 20:00:20 hours, as Rucker approached the intersection of Commerce Street and Main Street, Farrar again ran out into the path of an oncoming vehicle, pointed his taser at Rucker, and fired.   The following fairly and accurately depict Farrar firing his taser at Rucker:



Farrar's taser missed.

24.     Rucker turned left to head southbound on Main Street.

25.     At 20:00:33 hours, immediately after Farrar fired his taser at Rucker, Smith estimated that Rucker's horse had accelerated to 25 miles per hour.

26.     Rucker proceeded up Main Street and turned right on to Pearl Street. After going one block, Rucker turned right on to Church Street.

27.     Rucker then turned left on to Washington Street where at 20:01:30 hours Smith estimated Rucker was traveling at 16 miles per hour.

28.     As Rucker came down Washington Street, he approached its multi-directional intersection with Grace, 14th, and Harrison Streets.

29.     At 20:02:27 hours, Miller, who was stopped at the intersection, radioed to Smith: "Hey LT [Lieutenant], I'm out in front of you here."

30.     At 20:02:30 hours, Smith responded: "Alright. If you think you can get to a spot where you can deploy the taser safely, it's not's going, to hit the horse, go ahead and do it."

31.     As Rucker approached, Miller exited his vehicle at 20:02:34 hours. As Rucker

passed, Miller fired his taser at Rucker. Miller's taser hit Rucker and sent a charge. The

following fairly and accurately depict Miller firing at and hitting Rucker:











Immediately after Miller's tasing, Rucker's horse sped off up southbound Grace Street at what Smith estimated at 20:03:03 hours to be 15 miles per hour.

32.    Rucker then turned right from southbound Grace Street onto westbound 15th Street.

33.    Rucker rode westbound on 15th Street for approximately 2 blocks before falling off his horse at 20:03:42 hours at the intersection of 15th Street and Polk Street.  The following fairly and accurately depicts Rucker falling from his horse:





34.     Smith put his vehicle into park and began exiting the vehicle at 20:03:48.

35.     As Smith began exiting his vehicle, the second law enforcement vehicle in the chase, operated by Johnson, arrived on scene to the left of Smith's vehicle.

36.     Upon arriving on scene, Johnson jumped out of the driver's side door of his cruiser while it was still in the "drive" gear, not in the "park" gear, and without activating a

11

parking brake, ostensibly to begin chasing Rucker on foot. Johnson's abandoned vehicle thereupon rolled up on to a retaining wall from one of the neighboring homes to the vehicle's left, blew out the front left tire, and began careening to the right. Johnson then jumped back into the vehicle, turned it hard right into Rucker's direction, and applied the accelerator causing the vehicle to accelerate and run over Rucker's torso at speed. After running over Rucker, Johnson then turned his vehicle hard left and brought it to stop. The following fairly and accurately depicts this sequence of events from Smith's body worn and dash cameras:











The following fairly and accurately depicts this sequence of events from Johnson's body worn and dash cameras:















37.     Rucker sustained extensive, severe, and permanent injuries from Defendants'
pursuit, unreasonable seizure, use of excessive force, and grossly negligent deployment of tasers
and motor vehicle operation including, but not limited to, laceration of his liver with
hemorrhaging, pulmonary contusion, multiple rib fractures, concussion, nasal fracture, avulsion
of his left ear, and a right shoulder sprain/strain, as well as mental anguish and distress.

**<u>COUNT ONE – GROSS NEGLIGENCE</u>**
**(Against Defendants Farrar, Miller, and Johnson)**

38.     Plaintiff restates and incorporates herein the allegations set forth in Paragraphs 1
through 37 of the Complaint.

39.     At all relevant times, Defendants Farrar, Miller, and Johnson, and each of them,
owed Rucker the duty to use at least reasonable care, and under the circumstances owed Rucker
the duty to use higher levels of care, for the safety, well-being, and protection of Rucker.

40.     By their conduct, Defendants Farrar, Miller, and Johnson, and each of them,
subjected Rucker to their authority and control and were in a special relationship with Rucker

such that they owed Rucker the duty to use at least reasonable care, and under the circumstances owed the duty to use higher levels of care, for the safety, well-being, and protection of November.

41.    Defendants Farrar and Miller, and each of them, in violation of the duties they owed, without justification, intentionally, unlawfully, willfully and wantonly, and with gross negligence deployed their tasers in order to apply a high-voltage electrical shock or shocks to Rucker, with full knowledge that Rucker was only wanted for service of a permitted warrant, was actively riding on horseback, and that the delivery of a high-voltage electrical shock or shocks to either Rucker or his horse could result in his sustaining serious injuries or death. Indeed, Smith communicated to his officers to try and avoid tasing the horse.

42.    Defendant Johnson, in violation of the duties he owed, without justification, intentionally, unlawfully, willfully and wantonly, and with gross negligence exited his cruiser while it was still in the "drive" gear, not in the "park" gear, and without activating a parking brake. Further, upon reentering the abandoned and moving cruiser, Johnson turned the vehicle hard right into Rucker's direction and applied the accelerator causing the vehicle to accelerate and run over Rucker's torso at speed.

43.    Defendants Farrar, Miller, and Johnson, and each of them, were guilty of wrongful, unlawful, willful and wanton, and grossly negligent conduct in failing to take sufficient measures to protect the safety of Rucker; in firing their tasers; in exiting a moving vehicle without placing it in the "park" gear or engaging the parking brake, and then upon reentering the vehicle, applying the accelerator and steering the vehicle towards Rucker as he lay on the ground, and applying the accelerator; and in failing to take other necessary actions to protect Rucker from injury and harm.

19

44.     Defendants Farrar, Miller, and Johnson's actions and omissions alleged herein were contrary to accepted customs, usages, and standards for police conduct, and were done without Rucker's consent and without lawful justification or excuse.

45.     As a direct and proximate result of the willfully and wantonly negligent and grossly negligent conduct of Defendants Farrar, Miller, and Johnson, and each of them, Rucker sustained serious and permanent bodily injuries; has been and will continue to be prevented from transacting his business and household duties; has suffered and will continue to suffer physical pain and mental anguish; has suffered and will continue to suffer disfigurement, deformity, and associated humiliation and embarrassment; has suffered and will suffer inconvenience; and has incurred and will incur expenses for health care and treatment and other expenses necessitated by his injuries including hospital, doctors, health care bills, and other expenses necessary to treat, care for, cure and/or ameliorate his injuries and the pain, anguish, and impairments and conditions resulting from those injuries.

<u>COUNT TWO -- DEPRIVATION OF CIVIL RIGHTS</u>
**42 U.S.C. § 1983**
**(Excessive Force in Violation of Fourth and Fourteenth Amendments –**
**Against Defendants Farrar and Miller)**

46.     Plaintiffs restate and incorporate herein the allegations set forth in Paragraphs 1 through 45 of the Complaint.

47.     This is an action brought against Defendants Farrar and Miller, and each of them, in their individual capacities, pursuant to 42 U.S.C. § 1983 and § 1988 in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

48.     At all times relevant herein, Defendants Farrar and Miller, and each of them, were employees, agents, and/or servants of the LPD, and acting within the course and scope of their

employment with the same, and acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the LPD.

49.     Defendants Farrar and Miller, and each of them, used excessive and objectively unreasonable force on the person of Rucker, depriving him of bodily integrity, life, liberty, and due process of law.

50.     To wit, Defendants Farrar and Miller, and each of them, discharged their tasers at Rucker, as described above in this Complaint despite actual knowledge, among other things, that Rucker was only wanted for service of a permitted warrant, was actively riding on horseback, and that the delivery of a high-voltage electrical shock or shocks to either Rucker or his horse could result in his sustaining serious injuries or death. Indeed, Smith communicated to his officers to try and avoid tasing the horse. There was no then-present exigency that was sufficiently dangerous to justify the use of a taser against an individual riding on horseback, merely to serve him with a permitted warrant. The use of force exhibited by Defendants Farrar and Miller was objectively unreasonable and clearly excessive.

51.     As a direct and proximate result of Defendants Farrar and Miller's acts, omissions, and use of excessive force, they deprived Rucker of the right to life and due process of law guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution, in particular firing their tasers at Rucker, and causing significant injury by virtue of said deployment.

52.     As a direct and proximate result of Defendants Farrar and Miller's acts, omissions, and use of excessive force, Rucker has ongoing and continuous permanent damages and injuries.

53.     Defendants Farrar and Miller's violations of the Fourth and Fourteenth Amendments to the United States Constitution establish a cause of action, pursuant to 42 U.S.C. §

1983, for monetary relief consisting of compensatory damages and punitive damages, attorney's fees, and costs.

WHEREFORE, FOR THE FORGOING REASONS, Steve Rucker, Jr., by counsel, prays for and demands judgment against Defendants Jonathan Farrar, Zachary Miller, and Michael Johnson, Jr., jointly and severally, as follows:

(1)     Compensatory damages in the amount of FIVE MILLION DOLLARS ($5,000,000), plus pre-judgment interest from March 20, 2021, and post-judgment interest;

(2)     Punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND ($350,000), plus pre-judgment interest from March 20, 2021, and post-judgment interest;

(3)     An award for attorneys' fees and costs herein expended as authorized by 42 U.S.C. § 1988;

(4)     Such other legal and equitable remedies as may be allowed by law.

**TRIAL BY JURY IS DEMANDED.**

DATED:  January 11, 2023.


                                        STEVE RUCKER, JR.


                                        By: / s / Mark Dennis Dix
                                                Counsel

Mark D. Dix [VSB No. 42718]
DIX LAW FIRM, PLLC
Truist Place
919 East Main Street, Suite 625
Richmond, Virginia 23219
Tel.: (804) 500-6290
Fax: (804) 500-6291
Email: mdix@dixlawfirm.com

and

T. Vaden Warren, Jr. [VSB No. 42004]
THE WARREN FIRM
516 Locust Avenue
Charlottesville, Virginia 22902
Tel.: (434) 972-9090
Fax: (434) 972-9091
Email: vwarren@warren-law.com

*Counsel for Plaintiffs*