IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| STEVE RUCKER, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 6:23CV00003 |
| JONATHAN FARRAR, et. al. | ) ) ) |
| Defendants. | ) ) |

**DEFENDANT MILLER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Zachary Miller, by counsel, respectfully submits this memorandum in support of his motion to dismiss.

**INTRODUCTION**

Plaintiff Steve Rucker, Jr. claims Lynchburg Police Officer Zachary Miller violated his Fourth Amendment rights, committed a battery, and exhibited gross negligence and willful and wanton misconduct when he fired his taser at Plaintiff in response to Plaintiff fleeing police on horseback and leading officers on a pursuit through the streets of Lynchburg on March 20, 2021. Plaintiff's claims are unfounded. Officer Miller acted reasonably, within the confines of the Fourth Amendment, and did not violate state law when he deployed his taser in an attempt to stop Plaintiff and the danger he posed to officers and the public after Plaintiff failed to adhere to police commands and lights and sirens. Officer Miller acted on the directives of his supervisor and did not violate clearly established law. Accordingly, Officer Miller is entitled to qualified immunity, and respectfully requests that the Court dismiss the federal and state claims against him.

1

## ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff alleges the following:

On March 20, 2021, an Amherst County ("County") dispatcher contacted a City of Lynchburg ("City") dispatcher to advise that Plaintiff was on horseback and heading towards the John Lynch Memorial Bridge into the City from the County.  (Am. Compl. ¶ 9, ECF No. 18.) Plaintiff had an outstanding "permitted" warrant in the City for an alleged protective order violation.  (*Id.*)  A "permitted" warrant is a warrant that only requires an officer to serve the warrant and release the individual on a summons; it does not require arrest.  (*Id.* at p. 1 n. 1.) After confirming the Lynchburg Police Department ("LPD") had a copy of the process for Plaintiff, the dispatcher notified all LPD units, including Defendants, of Plaintiff's whereabouts, direction of travel, and that Plaintiff had an outstanding permitted warrant.  (*Id.* at ¶ 9.)

Lt. Brian Smith was driving his patrol vehicle when he encountered Plaintiff on horseback at approximately 7:56 PM on March 20, 2021.  (*Id.* at ¶ 10.)  It was dark out.  (*See generally*, *id.*)  Lt. Smith was heading northbound on Main Street while Plaintiff was heading southbound.  (*Id.*)  Lt. Smith activated his emergency lights and "gave a quick siren whelp." (*Id.*)  Then, while still in his vehicle, Lt. Smith rolled down his window and yelled "Steven! Steven!  Hold up buddy."  (*Id.* at ¶ 11.)  Plaintiff asked what Lt. Smith wanted him for, and then continued riding past the driver's side of Lt. Smith's vehicle.  (*Id.*)  Lt. Smith then initiated a pursuit of Plaintiff, and stated on the police radio, "He's not stopping.  We are in pursuit of a horse."  (*Id.* at ¶ 12.)  Lt. Smith then activated his lights and sirens.  (*Id.*)  Three more LPD vehicles subsequently joined the pursuit and also activated their lights and sirens.  (*Id.*)

LPD officers pursued Plaintiff as he fled police on horseback, making many turns onto various City streets.  (*Id.* at ¶¶ 13-16.)  From the images in the Amended Complaint, Farrar

appears to have been wearing a dark jacket and a blue and white striped shirt underneath, with no apparent reflective gear. (*See id.* at ¶¶ 18, 22, 30, 32, 35.) At approximately 7:59 PM, Lt. Smith stated over the public address system in his vehicle: "Steven this is the police department. Need you to stop the horse and get off. We *just have paperwork for you.*" (*Id.* at ¶ 17) (emphasis in original.) Lt. Smith radioed that Plaintiff was traveling at 10 miles per hour at that time. (*Id.*)

As Plaintiff traveled on Commerce Street, he passed the intersection of 13th Street, where Officer Farrar had exited his vehicle. (*Id.* at ¶ 18.) Officer Farrar pointed his taser at Plaintiff while he pursued Plaintiff on foot as Plaintiff continued down Commerce Street. (*Id.*) After Lt. Smith gave the order to deploy his taser, Office Farrar fired his taser at Plaintiff. (*Id.* at ¶¶ 19-22.) However, "Farrar's taser missed." (*Id.* at ¶ 22.) Plaintiff then "turned left to head southbound on Main street," extending the pursuit. (*Id.* at ¶ 23.) By this point, at approximately 8:00 PM, Lt. Smith estimated that Plaintiff had accelerated his speed on the horse to approximately 25 miles per hour. (*Id.* at ¶ 24.)

Plaintiff continued fleeing the officers and making turns on various City streets. (*Id.* at ¶¶ 25-27.) Officer Miller had set up a position in front of the pursuit. (*Id.* at ¶ 28.) Like Officer Farrar, Officer Miller received a directive from Lt. Smith to fire his taser at Plaintiff. (*Id.* at ¶ 29.) As Plaintiff passed Officer Miller, Miller fired his taser at Plaintiff, which hit Plaintiff and "sent a charge." (*Id.* at ¶ 30.) Immediately after the taser allegedly hit Plaintiff, Plaintiff "sped off up southbound Grace Street at what [Lt.] Smith estimated at [8:03 PM] to be 15 miles per hour." (*Id.*)

Plaintiff then turned right off of Grace Street onto westbound 15th Street, where he rode for approximately 2 blocks before falling off his horse near the intersection of 15th Street an

3

Polk Street. (*Id.* at ¶¶ 31-32.) Officer Johnson and Lt. Smith arrived on scene in their vehicles. (*Id.* at ¶¶ 33-34.) Upon arriving on scene, Officer Johnson allegedly:

> jumped out of the driver's side door of his cruiser while it was still in the "drive" gear, not in the "park" gear, and without activating a parking brake, ostensibly to begin chasing [Plaintiff] on foot. Johnson's abandoned vehicle thereupon rolled up on to a retaining wall from one of the neighboring homes to the vehicle's left, blew out the front left tire, and began careening to the right. Johnson then jumped back into the vehicle, turned it hard right into [Plaintiff's] direction, and applied the accelerator causing the vehicle to accelerate and run over [Plaintiff's] torso at speed. After running over [Plaintiff], Johnson then turned his vehicle hard left and brought it to stop.

(*Id.* at ¶ 35.)

Plaintiff alleges he suffered physical and mental/emotional injuries due to the actions of Miller and Johnson. (*Id.* at ¶ 36.)

## ARGUMENTS AND AUTHORITIES

**I.     Standard of Review.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal when a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." *Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a

4

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order for a plaintiff's claims to survive dismissal, he must allege facts sufficient to state all the elements of his claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). A plaintiff must provide the grounds of his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II. Plaintiff's allegations do not state a claim for excessive force under the Fourth Amendment, and Officer Miller is entitled to qualified immunity.

The allegations in the Amended Complaint support that the decision by Officer Miller to discharge his taser was reasonable. Moreover, Officer Miller is entitled to qualified immunity. Qualified immunity shields government officials from civil liability so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It protects law enforcement offices from liability for "bad guesses in gray areas" and ensures officers will be held liable "only for violating bright-line rules." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013). "A police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful." *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994). Courts use a two-pronged inquiry to resolve questions of qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first asks whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. *Id.* at 655-66. The second asks whether the right was clearly established at the time of the violation. *Id.* at 666. Courts have discretion to decide the order in which to decide these two questions. *Id.*

5

Whether the officer's use of force violated Plaintiff's Fourth Amendment rights turns on whether the use of force was "reasonable." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness standard is objective, taking into account the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to flee. *Meyers v. Baltimore County*, 713 F.3d 723, 732-33 (4th Cir. 2013).

As alleged, Plaintiff refused verbal commands to stop, ignored police lights and sirens, and led police on a pursuit through Lynchburg on horseback, at nighttime and in dark clothing. Plaintiff's actions presented an obvious safety threat to any civilians or officers he may have encountered on the street or in vehicles. Officer Miller's decision to deploy his taser was reasonable to protect the public and counter the safety threat presented by Plaintiff.

Every arrest must be presumed to present a risk of danger to the arresting officer because there is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of potential danger. *Washington v. Chrisman*, 455 U.S. 1, 7 (1982). The safety risk is heightened when a suspect flees: "[t]he act of resisting arrest poses a threat of direct confrontation between a police officer and the subject of the arrest, creating the potential for serious physical injury to the officer and others." *United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003). While the Fourth Circuit has cited approvingly to cases holding it unlawful to deploy a taser on a nonviolent, suspected misdemeanant who was <u>not fleeing</u> and <u>posed little to no threat to anyone's safety</u>, *see Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892, 908 (4th Cir. 2016) (citing *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010)), those cases do not guide the instant case.

In contrast to cases in which a taser was ruled excessive, Plaintiff was actively fleeing police and posed a grave threat to the safety of officers and the public. Plaintiff disobeyed commands and resisted arrest by fleeing law enforcement on horseback, riding on City streets and wearing dark colors at nighttime. He presented a substantial safety threat to civilians on the road and, most significantly, to drivers (and, consequently, himself) who may not be able to see Plaintiff or react quickly enough to avoid an accident. Under these circumstances, Officer Miller acted reasonably by deploying his taser after receiving the order from Lt. Smith (which reinforced the officer's belief that the taser was reasonable). At this time, Miller "would have believed his conduct was lawful." *Shaw*, 13 F.3d at 801. Indeed, courts have awarded qualified immunity to officers who tased fleeing misdemeanants posing less of a safety threat. *See, e.g.*, *Zimmerman v. Cutler*, 657 F. App'x 340 (5th Cir. 2016) (awarding qualified immunity to an officer who tased an unarmed, fleeing suspect who, at worst, was suspected of disorderly conduct); *Cockrell v. City of Cincinnati*, 468 F. App'x 491 (6th Cir. 2012) (awarding qualified immunity to an officer who tased an unarmed man suspected of jaywalking who ran from the officer); *McKenney v. Harrison*, 635 F.3d 354 (8th Cir. 2011) (awarding qualified immunity to an officer who tased an unarmed, fleeing misdemeanant when the suspect fled and attempted to jump out of the second-floor window of his house). Assessing Plaintiff's allegations, Officer Miller did not violate clearly established law when he discharged his taser. Accordingly, he is entitled to qualified immunity from the Plaintiff's Fourth Amendment claim.

## IV. Plaintiff's allegations cannot support any of his state law claims against Officer Miller.

Plaintiff bases his gross negligence, willful and wanton negligence, and battery claims against Officer Miller on the same allegations upon which he bases his Fourth Amendment claims. Gross negligence "is a degree of negligence showing indifference to another and an utter

7

disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliot v. Carter*, 292 Va. 618, 622 (2016) (internal quotations and citation omitted).  Pleading gross negligence requires asserting facts to show a degree of negligence that would "shock fair-minded persons."  *Id*.  "Because the standard for gross negligence in Virginia is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care."  *Id.* (internal quotations and citations omitted) (emphasis added).  To establish his claim for gross negligence, Plaintiff must plead facts to support the familiar elements of duty, breach of duty, proximate cause, and damages.  *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 132 (2000).

Willful and wanton negligence "is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another."  *Wilby v. Gostel*, 265 Va. 437, 446 (2003).

A battery is "an unwanted touching which is neither consented to, excused, nor justified."  *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009).

Because Officer Miller did not use excessive force, Plaintiff's state law claims should be dismissed.  These claims rise or fall with Plaintiff's Fourth Amendment excessive force claim.  *Johnson v. Dep't of Alcoholic Bev. Control*, 2016 U.S. Dist. LEXIS 172423, at *22-23 (W.D. Va. Dec. 12, 2016); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Unus*, 565 F.3d at 117; *Njang v. Montgomery County*, 279 F. App'x 209, 216 (4th Cir. 2008).  "Importantly, Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties."  *Unus*, 565 F.3d at 117.  "[I]n making an arrest under lawful authority, a police officer is within reasonable limits the judge of the force necessary under the circumstances, and

8

he cannot be found guilty of any wrong, unless he arbitrarily abuses the power conferred upon him." *Parker v. McCoy*, 212 Va. 808, 813 (1972) (internal quotations and citations omitted).

Officer Miller had legal justification to use his taser and did not breach any legal duty owed to Plaintiff. Officer Miller exercised "some degree of care" by obtaining permission from his supervisor, Lt. Smith, prior to deploying the taser. Furthermore, Officer Miller used reasonable force by deploying his taser in response to Plaintiff's actions for the reasons discussed above. Accordingly, Plaintiff's federal and state law claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Zachary Miller respectfully requests that the Court grant his motion to dismiss and dismiss the Plaintiff's claims against him with prejudice.

Respectfully Submitted,

ZACHARY MILLER

By: /s/ Julian F. Harf
Julian F. Harf (VSB #90775)
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: julianh@guynnwaddell.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark Dennis Dix, Esq.
Dix Law Firm, PLLC
919 East Main Street, Suite 625
Richmond, VA  23219
Phone: (804) 500-6290
Fax: (804) 500-6291
Email: mdix@dixlawfirm.com
*Counsel for Plaintiff*

T. Vaden Warren, Jr.
The Warren Firm
516 Locust Avenue
Charlottesville, VA 22902
Phone: (434) 972-9090
Fax: (434) 972-9091
Email: vwarren@warren-law.com

/s/ Julian F. Harf
Julian F. Harf (VSB #90775)
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: julianh@guynnwaddell.com
*Counsel for Defendants*