IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

**STEVE RUCKER, JR.,**

**Plaintiff,**

**v.**                                              Civil Action No. 6:23cv00003

**JONATHAN FARRAR, et al.,**

**Defendants.**

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MILLER'S MOTION TO DISMISS

Plaintiff Steve Rucker, Jr. ("Plaintiff" or "Rucker"), by counsel, states as follows in

opposition to the Motion to Dismiss (ECF No. 23) filed by Defendant Zachary Miller

("Defendant" or "Miller"):

### PRELIMINARY STATEMENT

This case arises from the use of heavy-handed tactics by members of the Lynchburg

Police Department ("LPD") in the performance of routine, ministerial law enforcement duties, to

wit, attempting to serve process upon Plaintiff. Am. Compl. at ¶¶ 3-17. Unfortunately, as to

Defendant, those tactics included using force—a taser—in a manner disfavored by the U.S.

Court of Appeals for the Fourth Circuit. *See, e.g.*, *Est. of Armstrong v. Vill. of Pinehurst*, 810

F.3d 892 (4th Cir. 2016).

### FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff alleges that on the evening of March 20, 2021, he was the subject of a

"permitted" warrant out of Lynchburg for an alleged protective order violation. Am. Compl. at ¶

9. Of particular importance, a "permitted" warrant means a law enforcement officer merely

needs to serve an individual and release them on a summons; a "non-permitted" warrant, by

contrast, means law enforcement needs to arrest someone, take them into custody, and process them. Am. Compl. at fn.1.

Lt. Brian Smith ("Smith") with the Lynchburg Police Department was the first to encounter Plaintiff while he was riding on horseback in downtown Lynchburg. Am. Compl. at ¶ 10. Smith was in an unmarked LPD SUV. *Id*. While still in his vehicle, Smith rolled down his window and stated "Steven! Steven! Hold up buddy." *Id*. at ¶ 11. Plaintiff asked what Smith wanted him for, and then continued riding past the driver's side of Smith's vehicle. *Id*. This set in motion a multi-vehicle pursuit of Plaintiff by LPD law enforcement officers, with lights and sirens activated, of a man who was riding horseback. Am. Compl. at ¶¶ 11-36.

As part of this pursuit, where Plaintiff's speeds were estimated at up to 25 miles per hour, *id*. at ¶ 24, Defendant fired his taser at Plaintiff as he came down Washington Street and passed through its multi-directional intersection with Grace, 14th, and Harrison Streets. *Id*. at ¶¶ 26-30. The taser struck Plaintiff and sent a charge. *Id*. at ¶ 30. Immediately thereafter, Plaintiff's horse sped off until Plaintiff ultimately fell from the horse. *Id*. at ¶¶ 30-36. As he lay in the street, Plaintiff was then run over by a moving police cruiser that had been abandoned, while still in the drive gear, by Defendant Michael Johnson, Jr. ("Johnson"), resulting in extensive, severe, and permanent injuries to Plaintiff. *Id*. at ¶¶ 34-36.

Plaintiff alleges that Defendant's taser deployment constituted the use of excessive

force in violation of the Fourth Amendment,[1] as well as gross negligence and/or willful and wanton misconduct, and battery. *Id.* at 17-21. Defendant has moved to dismiss the Amended Complaint under Fed R. Civ. P. 12(b)(6).

For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

### I.   STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 556. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. In ruling upon a motion to dismiss, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and draw all reasonable inferences from those facts in the plaintiff's favor." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). "[A] well-pleaded Complaint may proceed even if it strikes a

---

[1]      Count Two of the Complaint alleges that Defendant used excessive force in violation of both the Fourth and Fourteenth Amendments. Of course, "[c]laims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against unreasonable seizures . . . and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction the use of excessive force that amounts to punishment." *Wilson v. Gaff*, 2021 U.S. Dist. LEXIS 45923, *12 (D. Md. Mar. 11, 2021) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). As the Fourth Circuit has noted, "[t]he point at which the Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015), and given the Supreme Court's extension of the Fourth Amendment's objective reasonableness standard to the Fourteenth Amendment context in *Kingsley*, that distinction is now less significant.
      Regardless, both Plaintiff and Defendant agree that the Fourth Amendment analysis controls given the allegations of the Amended Complaint. *See* Deft. Mem. in Supp. of Mot. to Dismiss at 6-7.

savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very

remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

The courts have made it clear that *Twombly* did not mark a return to the ancient days of

code pleading; notice pleading remains all that is required in federal court.[2] In *Twombly* itself the

Supreme Court cautioned that it was not calling for a seismic shift in pleading standards stating,

"[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim

to relief that is plausible on its face." *Id*. at 570. The Fourth Circuit and this Court have similarly,

post-*Twombly*, continued to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6) with a

jaundiced eye even in § 1983 actions. *See*, *e.g.*, *McLean v. U.S.*, 566 F.3d 391, 399 (4th Cir.

2009) (stating, in a § 1983 action, that "[a]lthough the Supreme Court has subsequently made

clear that the factual allegations in a complaint must make entitlement to relief plausible and not

merely possible, 'what Rule 12(b)(6) does not countenance are dismissals based on a judge's

disbelief of a complaint's factual allegations'") (citation omitted); *Corbin v. Woolums*, 2008 U.S.

Dist. LEXIS 93509, *9 (E.D. Va. May 20, 2008) ("While § 1983 complaints that recite bare legal

conclusions that are 'wholly devoid of facts' . . . may warrant dismissal, conclusory legal

---

[2] Within the last several years (and ostensibly in response to what have now become *pro forma* motions to dismiss in the wake of "Twiqbal"), the Fourth Circuit and district courts have made a point of stating that *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "do not require a plaintiff to prove his case in the complaint," including in excessive force cases. *See, e.g., Hall v. Burney*, 454 Fed. App'x 149, 151 (4th Cir. Nov. 18, 2011) (district court erred in dismissing Fourth Amendment excessive force claim pursuant to Rule 12(b)(6)); *Matthews v. McCoy,* 2022 U.S. Dist. LEXIS 17924, **9-12 (W.D. Va. Feb. 1, 2022) (district court found that plaintiff sufficiently pled Eighth Amendment excessive force claim as to certain deputies); *Smith v. Centra Health, Inc.,* 2021 U.S. Dist. LEXIS 63080, **27-36 (W.D. Va. Mar. 31, 2021) (district court denied motion to dismiss Fourth and Fourteenth Amendment excessive force claim); *Gemaehlich v. Johnson*, 2013 U.S. Dist. LEXIS 20147, **4-7 (W.D. Va. Feb. 14, 2013) (as to Fourteenth Amendment excessive force claim, district court found the "complaint contains enough facts to state a facially plausible claim to relief against the deputies").

4

assertions that are supported by the pleaded facts—even if the factual assertions are equally consistent with a contrary conclusion—should survive a Rule 12(b)(6) motion to dismiss") (quoting *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989)).

In this case, Plaintiff has satisfied the liberal notice pleading requirement under Fed. R. Civ. P. 8(a)(2), and Defendant's motion should be accordingly denied.

## II. DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY AS TO THE EXCESSIVE FORCE CLAIM.

Plaintiff has plausibly pleaded that Defendant used excessive force in seizing Plaintiff, and Defendant is not entitled to qualified immunity. First, because the qualified immunity doctrine is foundationally flawed, the Court should refuse to further recognize it as a valid defense to § 1983 actions. Second, even assuming *arguendo* that qualified immunity remains a viable doctrine, Defendant is not entitled to it in this case because Plaintiff has plausibly pleaded that Defendant used excessive force, and at the time of Defendant's misconduct, the right of Plaintiff to be free from tasing was clearly established.

### A. The Court should find that the doctrine of qualified immunity is foundationally flawed and therefore will no longer be recognized by this Court as a defense to Section 1983 actions.

As Justice Don R. Willett of the U.S. Court of Appeals for the Fifth Circuit commented last month in his concurring opinion in *Rogers v. Jarrett*, 2023 U.S. App. LEXIS 7576, **12-15 (5th Cir. Mar. 30, 2023) (Willett, J., concurring), newly published scholarship has highlighted that the doctrine of qualified immunity as currently understood is wholly inconsistent with the text of what is now-Section 1983 as it was originally enacted by Congress in 1871. Specifically, Justice Willett pointed to Professor Alexander Reinert's recent article *Qualified Immunity's*

*Flawed Foundation*[3] which notes that the courts have been construing the wrong version of §

1983 for virtually its entire legal life. *Id*. at *13.

In his article, Professor Reinart noted that, as passed by the Reconstruction Congress,

Section 1 of the Civil Rights Act of 1871 (now colloquially known as § 1983) read this way:

> [A]ny person who, under color of any law, statute, ordinance,
> regulation, custom, or usage of any State, shall subject, or cause to
> be subjected, any person within the jurisdiction of the United
> States to the deprivation of any rights, privileges, or immunities
> secured by the Constitution of the United States, shall, *any such law,*
> *statute, ordinance, regulation, custom, or usage of the State to the*
> *contrary notwithstanding*, be liable to the party injured in any action
> at law, suit in equity, or other proper proceeding for redress…

Civil Rights Act of 1871, 17 Stat. 13, 42 Cong. Ch. 22 § 1 (italics added). Justice Willett noted

that this italicized language (the "Notwithstanding Clause," as Professor Reinart put it),

explicitly displaces common-law defenses, and makes clear Congress's original intent that §

1983 claims are viable <u>notwithstanding</u> "any such law, statute, ordinance, regulation, custom, or

usage of the State to the contrary." *Id*. at *14. Justice Willett further noted that "[t]he language is

unsubtle and categorical, seemingly erasing any need for unwritten, gap-filling implications,

importations, or incorporations. Rights-violating state actors are liable—period—

*notwithstanding* any state law to the contrary." *Id*. (italics in original).

As Justice Willett noted, for reasons unknown except unto history, the "notwithstanding

clause" was inexplicably omitted from the first compilation of federal law in 1874. *Id*. The

Reviser of Federal Statutes made an unauthorized alteration to Congress's language, an error that

was compounded when the various revised statutes were published in the first United States

Code in 1926. *Id*. at **14-15. The Reviser's error, Justice Willett noted, whether one of omission

---

[3] Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201 (2023).

6

or commission, has never been corrected, and thus "courts and scholars have never 'grappled' with the Notwithstanding Clause's significance." *Id*. at *15.

The patently obvious conclusion, Justice Willett noted, is the following:

> [T]he Supreme Court's original justification for qualified immunity—that Congress wouldn't have abrogated common-law immunities absent explicit language—is faulty because the 1871 Civil Rights Act expressly included such language. Those sixteen lost words, by presumably encompassing state common-law principles, undermine the doctrine's long-professed foundation and underscore that what the 1871 Congress meant for state actors who violate Americans' federal rights is not immunity, but liability— indeed, liability notwithstanding any state law to the contrary.

*Id.*

Qualified immunity was a legal fiction created out of factual fiction -- a statute wholly different from what Congress actually enacted.

Accordingly, this Court should refuse to further recognize qualified immunity as a defense to § 1983 actions and deny Defendant's Motion.

## B.      Nevertheless, Defendant is not entitled to qualified immunity.

Even assuming *arguendo* that qualified immunity remains a viable doctrine, as this Court is well-aware, "[w]hen qualified immunity is asserted, the reviewing court should usually first ask whether the right was violated on the facts alleged, and then determine whether that right was 'clearly established.'" *LeSueur—Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009)); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]e conclude that, while the sequence set forth [in *Saucier v. Katz*, 533 U.S. 194 (2001)] is often appropriate, it should no longer be regarded as mandatory." (first alteration in original)). It is within the Court's discretion to determine which prong of the test to address first. *Hunsberger v. Wood*, 570 F.3d 546, 552 (4th Cir. 2009).

In *Pearson*, the U.S. Supreme Court expressly recognized that "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson*, 555 U.S. at 238-39. Aware of this possibility, this Court has previously found that a determination of whether a law enforcement officer was entitled to qualified immunity at the motion to dismiss stage of the litigation was not appropriate or premature. *See Smith v. Parker*, 2020 U.S. Dist. LEXIS 94831, **10-11 (W.D. Va. June 1, 2020) ("Here, a more fully developed factual record will assist me in deciding defendants' qualified immunity claims. Accordingly, defendants' motion to dismiss the failure to protect and excessive force claims based on qualified immunity will be denied, without prejudice to defendants' ability to raise the issue again at a later stage of proceedings, if appropriate") (citing *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013)); *see also Smith v. Centra Health, Inc.*, 2021 U.S. Dist. LEXIS 63080, *35 (W.D. Va. Mar. 31, 2021) (quoting *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005)); *Cummings v. City of Wheeling*, 2019 U.S. Dist. LEXIS 209690, **7-8 (N.D. W. Va. Dec. 5, 2019); *Cooper v. Nichols*, 2019 U.S. Dist. LEXIS 16794, *9 (E.D. Va. Feb. 1, 2019) ("a more fully developed factual record will aid in the accurate adjudication of the merits of defendants' qualified immunity claims").

### 1.    Plaintiff has plausibly pleaded that Defendant used excessive force.

With the foregoing in mind, it is readily apparent that Plaintiff has satisfied the first prong of the *Saucier* analysis as he has plausibly pleaded that Defendant used excessive force in violation of the Fourth Amendment.

As this Court recently noted, "[t]he Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *BLM of the Shenandoah Valley, LLC v. Augusta Cnty.*, 2023 U.S. Dist. LEXIS 42633, *36 (W.D. Va. Mar.

8

14, 2023) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)). Excessive force claims are scrutinized using the Fourth Amendment's "objective reasonableness" standard. *Id*. Further, analyzing the reasonableness of a law enforcement officer's actions "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"[T]he Supreme Court in *Graham v. Connor* had clearly established [by 1989] that *all* claims of excessive force in the course of any seizure of a free person must be analyzed under an "objective reasonableness" standard, taking into account [certain] factors." *Jones*, 325 F.3d at 532 (citing *Graham*, 490 U.S. at 395-96 (1989)) (emphasis added). Neither the Fourth Circuit nor the Supreme Court has deviated from that analysis. This analysis "requires careful attention to the facts and circumstances of each particular case." *Id*. Those facts and circumstances include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id*. at 527-28 (citations omitted).  These factors are non-exhaustive, *Kingsley*, *supra* n.1, 576 U.S. at 397, and, as the Fourth Circuit has noted, the extent of the plaintiff's injury is also a relevant consideration. *Jones*, 325 F.3d at 527 (citing *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994), *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987)). "The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). The officer's actions do not amount to excessive force if they "are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent

or motivation." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citing *Graham*, 490 U.S. at 397).[4]

Here, the first *Graham* factor clearly favors Plaintiff: Defendant deployed his taser despite the fact that Plaintiff *was not wanted for the commission of any crime* at the time law enforcement gave pursuit. LPD officers merely needed to serve a <u>non-permitted warrant</u> upon Plaintiff for an alleged protective order violation. Plaintiff wasn't being sought for murder (or any other crime of violence). Plaintiff wasn't being sought for robbery or any other property offense . . . Plaintiff wasn't even being sought for petit larceny or an unpaid parking ticket. Instead, LPD officers merely needed to serve Plaintiff with court papers; in this respect, at the time they first encountered Plaintiff, LPD officers were functioning as process servers.

The second *Graham* factor also favors Plaintiff. Plaintiff presented absolutely no threat to the officers or others: Plaintiff was riding a horse through Lynchburg . . . period, hard stop. Defendant's assertion that because Plaintiff was riding horseback "at nighttime and in dark clothing" he presented "an obvious safety threat to any civilians or officers he may have encountered on the street or in vehicles" is without merit. Deft. Mem. in Supp. of Mot. to Dismiss at 6. If anything, *if* the situation was dangerous, it became that way because LPD officers elected to chase and spook a horse and deploy electrical weapons at its rider. But, to assert that Plaintiff, by virtue of riding a horse at nighttime and in dark clothing, constituted an "obvious safety threat"

---

[4]     Because it is an *objective* versus *subjective* standard, Defendant's assertion that his use of force was proper at least in part because he received permission from Lt. Smith to deploy his taser is rendered irrelevant.
        Moreover, Plaintiff is unaware of any "Nuremburg defense" to § 1983 actions.

10

stretches credulity.[5]

While the Court should find the second *Graham* factor favors Plaintiff, at a minimum this factor highlights precisely why a more developed factual record is necessary before addressing qualified immunity. For present purposes, though, the Amended Complaint plausibly pleaded that Defendant used excessive force.

The third *Graham* factor also favors Plaintiff: Plaintiff was not actively "resisting arrest or attempting to evade arrest by flight." Plaintiff concedes that he refused verbal commands to stop. However, there is no allegation in the Amended Complaint that LPD officers had suspicion that Plaintiff had committed a crime, or were seeking to arrest Plaintiff or otherwise take him into custody. To the contrary, as noted in the Amended Complaint, Lt. Smith advised Rucker through the public address system in his vehicle: "Steven, this is the police department. Need you to stop the horse and get off. *We just have paperwork for you*." Am. Compl. at ¶ 17. Under the allegations of the Amended Complaint, there was no "arrest" or "attempted arrest" at the time Defendant deployed his taser. Further, upon information and belief, to date Plaintiff has never been arrested or charged with any crime for the events of March 20, 2021, or any event that might have precipitated LPD officers' efforts to make contact with Plaintiff on March 20, 2021.

There was a request by LPD officers that Plaintiff stop. Plaintiff admits that he refused to stop. But that is an entirely different inquiry altogether from whether Plaintiff was "*resisting*

---

[5] Indeed, if such conduct constitutes an "obvious safety threat," the mounted units with the Cities of Richmond and Virginia Beach, among others, should be placed on notice of this danger immediately. *See* Richmond Police Mounted Unit, https://www.rva.gov/police/mounted-patrol (last visited April 27, 2023); Virginia Beach Police Mounted Patrol Unit, https://www.vbgov.com/government/departments/police/opsdiv/Pages/Mounted-Patrol.aspx (last visited April 27, 2023).

*arrest or attempting to evade arrest by flight*." This factor weighs heavily in Plaintiff's favor and

Defendant's Motion should be denied.

Other factors bearing upon the *Graham* analysis also weigh in Plaintiff's favor.

Defendant deployed a taser, a dangerous electrical weapon, at a passing individual who was

riding a horse (without a seat belt or some other mechanism to prevent his ejection), an animal

that is known to be potentially dangerous if spooked, at a last reported estimated speed of 16

miles per hour. Am. Compl. at ¶ 26. As the Fourth Circuit has noted:

> Deploying a taser is a serious use of force. The weapon is designed to "caus[e] . . . excruciating pain," *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010), and application can burn a subject's flesh, *see Orem v. Rephann*, 523 F.3d 442, 447-48 (4th Cir. 2008) *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *cf. Commonwealth v. Caetano*, 470 Mass. 774, 26 N.E.3d 688, 692 (Mass. 2015) ("[W]e consider the stun gun a per se dangerous weapon at common law."). We have observed that a taser "inflicts a painful and frightening blow." *Orem*, 523 F.3d at 448 (quoting *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 1993)). Other circuits have made similar observations. *See, e.g., Estate of Booker v. Gomez*, 745 F.3d 405, 414 n.9 (10th Cir. 2014) ("A taser delivers electricity into a person's body, causing severe pain."); *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 726 (7th Cir. 2013) ("This court has acknowledged that one need not have personally endured a taser jolt to know the pain that must accompany it, and several of our sister circuits have likewise recognized the intense pain inflicted by a taser." (internal citations and quotation marks omitted)); *Bryan* [*v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010)] ("The physiological effects, the high levels of pain, and foreseeable risk of physical injury lead us to conclude that the X26 and similar devices are a greater intrusion than other non-lethal methods of force we have confronted.").

*Est. of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016). This is precisely why,

for instance, Lt. Smith advised his officers to try to avoid hitting Plaintiff's horse with a taser.

Am. Compl. at ¶ 29. This mode of force was excessive and objectively unreasonable under the

circumstances.

Lastly, the Amended Complaint expressly states the severity of injuries Plaintiff sustained after he and/or his horse received current from Defendant's taser, the horse sped off, and Plaintiff fell and was subsequently run over by Johnson. Am. Compl. at ¶ 36.

The *Graham* factors weigh heavily, if not exclusively, in Plaintiff's favor compelling the conclusion that the Amended Complaint plausibly pleaded a claim that Defendant used excessive force in violation of the Fourth Amendment. Defendant's Motion should therefore be denied.

### 2. Plaintiff's constitutional right to be free from tasing was clearly established at the time of Defendant's misconduct.

Plaintiff easily satisfies the second prong of the *Saucier* analysis as well. Under the second prong, the Court must ask whether the right at issue was clearly established at the time of defendant's alleged misconduct.[6] *Putman v. Harris*, 2023 U.S. App. LEXIS 9295, *8 (4th Cir. April 19, 2023) (quoting *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014)).

A "right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established' for purposes of qualified immunity." *Wilson v. Prince George's Cty.*, 893 F.3d 213, 221 (4th Cir. 2018); *see Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) ("[A] 'general constitutional rule . . . may apply with obvious clarity . . . even though the very action in question has not previously been held unlawful.'") (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Indeed, the Supreme Court has never required a "'case directly on point for a right to be clearly established.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152

---

[6] It is telling that Defendant fails to cite a single decision from anywhere within the Fourth Circuit in support of his bold statement, "Indeed, courts have awarded qualified immunity to officers who tased fleeing misdemeanants posing less of a safety threat." Deft. Mem. in Supp. of Mot. to Dismiss at 7 (citing decisions from the Fifth, Sixth, and Eighth Circuits). To do so would fly in the face of Fourth Circuit precedent. Moreover, as stated previously, *supra* at 10, at the time the taser was deployed Plaintiff was neither a fleeing misdemeanant nor a fleeing felon.

(2018) (citation omitted); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Thus, "even without 'directly on-point, binding authority,' qualified immunity is inappropriate if 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'" *Ray v. Roane*, 948 F.3d 222, 229-30 (2020) (citation omitted).

The constitutional right to be free from the use of a taser except in circumstances that present a risk of immediate danger can be traced back to the Fourth Circuit's 2013 decision in *Meyers v. Balt County*, 713 F.3d 723 (4th Cir. 2013). In *Meyers*, the Fourth Circuit analyzed a defendant-officer's taser deployments based on the level of resistance the arrestee was offering -- and the danger that resistance posed to the officers -- when each shock was administered. *Id*. at 733-34. The court found that the "first three deployments of [the] taser did not amount to an unreasonable or excessive use of force[] [because the arrestee] was acting erratically, was holding a baseball bat that he did not relinquish until after he received the second shock, and was advancing toward the officers . . . ." *Id*. at 733. However, the court found that seven later deployments of the taser did amount to excessive force:

> It is an excessive and unreasonable use of force for a police officer repeatedly to administer electrical shocks with a taser on an individual who no longer is armed, has been brought to the ground, has been restrained physically by several other officers, and no longer is actively resisting arrest.

*Id*. at 734. "Immediate danger," as the Fourth Circuit would later note in *Armstrong*, 810 F.3d at 903, was the touchstone inquiry -- tasing the arrestee ceased being proportional force when the officer "continued to use his taser" after the arrestee "did not pose a continuing threat to the officers' safety." *Meyers*, 713 F.3d at 733.

Then, in the seminal case of *Est. of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892 (4th Cir. 2016), the Fourth Circuit again analyzed an excessive force claim related to the use of tasers,

14

and again highlighted that the primary criterion is the immediacy of danger. In *Armstrong*, police officers repeatedly tased a mentally ill man who had not complied with their directions to unwrap himself from a stop sign. *Id.* at 896-98. Armstrong died shortly thereafter, and his estate sued under § 1983, alleging that the tasings constituted excessive force and violated the Fourth Amendment. *Id.* at 898. The district court awarded summary judgment to the officers, predicated on qualified immunity, and the Fourth Circuit affirmed because while it found the officers' actions were *prima facie* unreasonable, and thus a Fourth Amendment violation, it found that at the time of the officers' misconduct the constitutional right was not clearly established. *Id.* at 898, 905-10.

However, with *Armstrong*, the Fourth Circuit could not have been any clearer as to the standard going forward:

> Our precedent, then, leads to the conclusion that a police officer may <u>*only*</u> use serious injurious force, like a taser, when an <u>*objectively reasonable*</u> officer would conclude that the circumstances present a risk of <u>*immediate danger*</u> that could be mitigated by the use of force. At bottom, "physical resistance" is not synonymous with "risk of immediate danger."

*Id.* at 905 (emphasis added). Continuing, the Court stated, "[W]e intend this opinion to clarify when taser use amounts to excessive force in, at least some circumstances. A taser, like "a gun, a baton . . . or other weapon," is expected to inflict pain or injury when deployed. It, therefore, may *only* be deployed when a police officer is *confronted* with an exigency that creates an *immediate safety risk and that is reasonably likely to be cured by using the taser*." *Id.* at 909 (quoting *Meyers*, 713 F.3d at 735) (emphasis added). Further, the Court noted, "The subject of a seizure does not create such a risk simply because he is doing something that can be

15

characterized as resistance-even when that resistance includes physically preventing an officer's manipulations of his body." *Id*.

This Court, in denying a motion to dismiss a Fourth Amendment excessive force claim on qualified immunity grounds, noted *Armstrong*'s unequivocal teachings: "The Fourth Circuit has held that a taser "may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser." *Smith v. Centra Health, Inc.*, 2021 U.S. Dist. LEXIS 63080, *33 (W.D. Va. Mar. 31, 2021); *see also Smith v. Town of S. Hill*, 611 F. Supp. 3d 148 (E.D. Va. 2020) (same). More importantly for present purposes, this Court noted that the constitutional right violated at hand was clearly established. *Id*. at *34; *Smith*, 611 F. Supp. 3d at 178 (same).

Three months after *Armstrong*, in *Yates v. Terry*, 817 F.3d 877 (4th Cir. 2016), the Fourth Circuit would find that the constitutional right was clearly established at the time of defendant's misconduct. *Id*. at 887. In *Yates*, plaintiff brought a Fourth Amendment excessive force claim against an officer who tased him three times during a *Terry* traffic stop. *Id*. at 881. The Fourth Circuit affirmed the district court's denial of summary judgment on qualified immunity grounds. *Id*. at 888. In 2019, in *Cansler v. Hanks*, 777 Fed App'x. 627 (4th Cir. 2019), the Fourth Circuit noted, "The *Yates* decision reiterated *Armstrong*'s ruling that a taser 'may only be deployed when a police officer is confronted with an exigency that creates an *immediate safety risk*.'" *Id*. at 636 (citation omitted) (emphasis added).

In light of the foregoing, as of March 20, 2021, the constitutional right of Plaintiff to not be tased under the circumstances of this case was clearly established. Through the aforementioned decisions, all law enforcement officers within the Fourth Circuit have been on notice since at least the *Armstrong* decision in 2016 (and arguably as early as the *Meyers*

16

decision in 2013) that tasers are <u>only</u> to be used to address an <u>immediate danger</u>; they are not to be used solely to enforce compliance with commands.

None of the circumstances that might justify the use of a taser applied here. Plaintiff was not presenting any *immediate danger*—to anyone—that could *only* be remedied through the use of force. Plaintiff was not suspected of a crime. Plaintiff was not under arrest, not fleeing arrest, and was not providing any physical resistance to arrest as in *Armstrong*.[7] Instead, Plaintiff was riding horseback and refused to stop for the police. Unhappy with Plaintiff's refusal, Defendant then used what can only be fairly described as unnecessary, gratuitous, and disproportionate force to seize Plaintiff.

Because Plaintiff's constitutional right to be free from tasing was clearly established, Defendant's Motion should be denied.

## III.   PLAINTIFF HAS PLAUSIBLY PLEADED HIS STATE LAW CLAIMS.

Finally, Plaintiff has more than adequately pleaded enough facts to allow this case go forward on his state law claims, regardless of whether Defendant's actions are ultimately found by the factfinder to have been intentional (Count III – Battery), or, alternatively, unintentional but in derogation of the standard of care (Count I – Gross Negligence and Willful and Wanton Misconduct),

In Virginia, a battery is "an unwanted touching which is neither consented to, excused, nor justified." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (quoting *Koffman v. Garnett*, 265 Va. 12, 16 (2003)). As this Court has noted:

---

[7] In this regard, the facts of this case are considerably stronger than in *Armstrong*. Indeed, if "[a]t bottom, 'physical resistance' is not synonymous with 'risk of immediate danger,'" *Armstrong*, 810 F.3d at 905, then what is no resistance whatsoever?

17

> Under Virginia law, police officers are legally justified in using reasonable force to execute their lawful duties. *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009); *Pike v. Eubank*, 197 Va. 692, 90 S.E.2d 821 (1956). "Accordingly, if reasonable force is used by police officers in execution of their lawful duties, they are immune from suit for such acts." *Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009). Virginia state-law assault and battery claims are analyzed under Fourth Amendment principles. *Carter v. Khan*, 2015 U.S. Dist. LEXIS 149955, **33-34 (E.D. Va. Nov. 4, 2015).

*Putman v. Harris*, 2022 U.S. Dist. LEXIS 55404, *27-28 (W.D. Va. Mar. 28, 2022) *reversed and remanded on other grounds by Putman v. Harris*, 2023 U.S. App. LEXIS 9295 (4th Cir. April 19, 2023).

This Court, in another tasing case, has accordingly refused to dismiss a battery claim where it also denied the defendant's motion to dismiss a Fourth Amendment excessive force claim on qualified immunity grounds. *See Smith v. Centra Health, Inc.*, 2021 U.S. Dist. LEXIS 63080 (W.D. Va. Mar. 31, 2021); *see also Southworth v. Jones,* 529 F. Supp. 3d 454, 465-66 (E.D. Va. 2021); *Warner v. Centra Health Inc.*, 503 F. Supp. 3d 479, 497-98 (W.D. Va. 2020).

Similarly, in this case, because Plaintiff has plausibly pleaded that Defendant used excessive force in violation of the Fourth Amendment, *see supra* at 8-13, Defendant's Motion to dismiss the battery claim should also be denied.

Plaintiff has also plausibly pleaded gross negligence and willful and wanton misconduct.

"Gross negligence" is defined by the Supreme Court of Virginia as "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of the [plaintiff]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." *Ferguson v. Ferguson*, 212 Va. 86, 92 (1971). "Whether certain actions constitute gross

negligence is generally *a factual matter for resolution by the jury* and becomes a question of law only when reasonable people cannot differ." *Koffman v. Garnett*, 265 Va. 12, 15 (2003) (emphasis added); *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987). Finding as a matter of law that the Amended Complaint does not plead gross negligence would be improper if the facts alleged, assumed to be proven true at the stage of the pleadings, could lead "a reasonable person to conclude that, in this instance, [the defendant's] actions were imprudent and were taken in utter disregard for the safety of the [plaintiff]." *Id.* at 16. Gross negligence is heavily fact bound, normally decided by a jury, and "[s]everal acts of negligence which separately may not amount to gross negligence, when combined may have a cumulative effect showing a form of reckless or total disregard for another's safety." *Chapman v. City of Va. Beach*, 252 Va. 186, 190 (1996).

There have been numerous cases in Virginia where police officers were liable or potentially liable for gross negligence associated with their use of force. For instance, in *Green v. Ingram*, 269 Va. 281 (2005), a police officer fired five frangible breaching rounds from a shotgun at a suspect's door—instead of at the door's metal hardware as the standard of care required—thereby killing the suspect who was on the other side of the door. *Id*. at 284-86. The Supreme Court of Virginia, in reversing and remanding the trial court's decision striking plaintiff's evidence, held that the issue of the officer's gross negligence was for the jury to decide. *Id*. at 291.

In *Gray v. Rhoads*, 268 Va. 81 (2004), the Supreme Court of Virginia allowed a plaintiff to pursue a gross negligence claim against a police officer who caused the plaintiff's death while plaintiff was being handcuffed. *See also Wernert v. Green*, 419 F. App'x 337 (4th Cir. 2011) (denying summary judgment on the issue of gross negligence against a sheriff and sheriff's deputy who used excessive force while the plaintiff was handcuffed); *accord Valladares v.*

19

*Cordero*, 552 F.3d 384, 390 (4th Cir. 2009) (denying summary judgment to police officers accused of gross negligence while the plaintiff was handcuffed), *Lescs v. City of Winchester*, 2020 U.S. Dist. LEXIS 222432 (W.D. Va.  Nov. 30, 2020) (same).

In an eerily similar case, *Washington v. Jurgens*, 2016 U.S. Dist. LEXIS 86321 (E.D. Va. July 1, 2016), the court allowed a plaintiff to pursue gross negligence claims against police officers who handcuffed a plaintiff, laid the plaintiff down on the ground, and then attempted to secure the plaintiff's vehicle by removing the key from the ignition. The car rolled backwards and struck plaintiff, causing serious injury. In another example, *Lloyd v. Morgan*, 2015 U.S. Dist. LEXIS 35345 (E.D. Va. Feb. 20, 2015), the court allowed a plaintiff to pursue a claim of gross negligence against police officers. In that case, the plaintiff lost her footing and fell down a flight of steps while she was descending the courthouse stairs. The plaintiff was in handcuffs secured behind her back and had shackles around her ankles.

In this case, Plaintiff has plausibly pleaded that Defendant's actions, in firing his taser at an individual, who merely needed to be served with process, and was riding horseback at estimated speeds of up to 25 miles per hour, constituted gross negligence. Accordingly, Defendant's Motion should be denied.

Proving willful and wanton misconduct requires establishing that Defendant consciously disregarded Plaintiff's rights or acted with reckless indifference to consequences to which Defendant was aware under existing circumstances probably would cause injury. *Curtis v. Highfill*, 298 Va. 499, 505 (2020). An actor engaging in willful and wanton conduct must intend the behavior but need not intend the resulting harm. *Id*. at 507. Cases asserting insufficiency of the claim must be evaluated on their own facts. *Id*. In *Curtis*, the Supreme Court of Virginia reversed the trial court's decision striking evidence of willful and wanton behavior (and thus the

claim for punitive damages) when a physician over-prescribed pain medication, leading to the victim's death. *Id.* The court noted that the defendant's professional experience provided circumstantial evidence that he "was conscious of the risks posed by the long-term use of narcotic pain medication." *Id*. And he was conscious of the risks involved with respect to the specific patient. *Id*. Thus, a reasonable jury could determine that the doctor "was conscious of the risks associated with the long-term use of Percocet and [the victim's] increased risk of drug abuse and addiction," and he consciously disregarded those risks when continuing to prescribe the drug. *Id*. at 508. The Supreme Court of Virginia also recognized a finding of willful and wanton behavior was appropriate for a trained professional failing to engage in simple and required procedures for others' safety in *Alfonso v. Robinson*, 257 Va. 540, 546 (1999), where it noted that the jury's finding was appropriate because, "[d]espite []his training and knowledge, [a truck driver] consciously elected to leave the disabled truck in a travel line of an interstate highway without placing any warning devices behind it."

For the same reasons previously stated, Plaintiff has plausibly pleaded that, under the facts of this case, Defendant consciously disregarded Plaintiff's rights, or acted with reckless indifference to consequences to which Defendant was aware under existing circumstances probably would cause injury to Plaintiff. Defendant's Motion should therefore be denied.

## CONCLUSION

This case is straightforward: an individual, who was sought merely for purposes of being served with process, was treated like a fleeing suspected felon. Plaintiff was not suspected of committing any crime, was not under arrest, and was not fleeing arrest. Nevertheless, and despite the fact that Plaintiff was on horseback, unsecured, and traveling at estimated speeds of up 25 miles per hour, Defendant deployed his taser—an inherently painful mode of force.

21

Defendant violated both the Fourth Amendment and Virginia common law.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant's Motion to Dismiss.

STEVE RUCKER, JR.

By: / s / Mark Dennis Dix
          Counsel

Mark D. Dix [VSB No. 42718]
DIX LAW FIRM, PLLC
Truist Place
919 East Main Street, Suite 625
Richmond, Virginia 23219
Tel.: (804) 500-6290
Fax: (804) 500-6291
Email:

and

T. Vaden Warren, Jr. [VSB No. 42004]
THE WARREN FIRM
516 Locust Avenue
Charlottesville, Virginia 22902
Tel.: (434) 972-9090
Fax: (434) 972-9091
Email: vwarren@warren-law.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April 2023, I electronically filed the foregoing Memorandum of Points and Authorities in Opposition to Defendant Miller's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will then send an electronic copy and notification of such filing (NEF) to the following:

Jim Guynn, Esquire
GUYNN, WADDELL, CARROLL & LOCKABY, PC
415 S. College Avenue
Salem, Virginia 24153
*Counsel for Defendants*

/ s / Mark Dennis Dix

_____
Mark D. Dix [VSB No. 42718]
DIX LAW FIRM, PLLC
Truist Place
919 East Main Street, Suite 625
Richmond, Virginia 23219
Tel.: (804) 500-6290
Fax: (804) 500-6291
Email: mdix@dixlawfirm.com