CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/7/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| STEVE RUCKER, JR., | CASE NO. 6:23-CV-00003 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| ZACHARY MILLER and MICHAEL JOHNSON, JR., | JUDGE NORMAN K. MOON |
| *Defendants.* | |

In his Amended Complaint, Plaintiff Steve Rucker, Jr., alleges that Lynchburg police officer Zachary Miller violated his Fourth Amendment rights by unjustifiably tasing Plaintiff. Plaintiff brings this excessive force claim under 42 U.S.C. § 1983, along with state law claims for gross negligence, willful and wanton misconduct, and battery against Defendant Miller. Pursuant to Rule 12(b)(6), Defendant Miller has filed a motion to dismiss, in which he argues that the pleadings fail to state a cause of action and that he is shielded from liability based on qualified immunity. Taking all of Plaintiff's allegations as true, as the Court must do at this stage in the proceedings, Plaintiff has sufficiently pled excessive force and state law claims against Defendant Miller, and the Rule 12(b)(6) motion will be denied.

## I. Background

The following facts are alleged in Plaintiff's Amended Complaint and, at this stage in the pleadings, must be assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining standard of review).

On March 20, 2021, Amherst County Emergency Communications radioed Lynchburg emergency services that Plaintiff was heading toward Lynchburg on horseback and that a

1

"permitted" warrant for Plaintiff was outstanding.[1] *Id*. ¶ 9. The warrant was for an alleged protective order violation. *Id.* The Lynchburg Police Department ("LPD") then notified all LPD units, including Defendant Miller, of Plaintiff's whereabouts. *Id*. Around 7:56 p.m. that evening, Lieutenant Brian Smith encountered Plaintiff who was on horseback in downtown Lynchburg. *Id.* ¶ 10. Smith, in an unmarked LPD SUV, "activated his emergency lights and gave a quick siren whelp" to get the attention of Plaintiff. *Id*. ¶ 10. Smith rolled down his window and said, "Steven! Steven! Steven! Hold up buddy." *Id.* ¶ 11. Plaintiff asked what Smith wanted from him and continued to ride. *Id.* Smith then stated on the police radio, "[h]e's not stopping. We are in pursuit of a horse." *Id*. ¶ 12. LPD officers pursued Plaintiff through the streets of downtown Lynchburg for about seven minutes, going between ten and twenty-five miles per hour, and turning down about a dozen streets. *Id.* ¶¶ 9-32.

After a few minutes of chasing Plaintiff, who at that time was going about ten miles per hour on his horse, Smith stated over the loudspeaker in his vehicle, "Steven, this is the police department. Need you to stop the horse and get off. We just have paperwork for you." *Id.* ¶ 17. Officer Jonathan Farrar, on foot, pursued Plaintiff with his taser out and pointed at Plaintiff. *Id.* ¶¶ 18-19. Farrar deployed his taser missing Plaintiff and his horse. *Id*. ¶ 22. Plaintiff's horse accelerated to around twenty-five miles per hour immediately following the missed shot. *Id.* ¶ 24.

A few minutes later, Defendant Miller encountered Plaintiff and tased him. *Id.* ¶ 30. Plaintiff's horse sped off going about fifteen miles per hour until Plaintiff fell off his horse two blocks later. *Id.* ¶¶ 31-32. As Plaintiff lay in the street, Defendant Officer Michael Johnson, Jr.,

---

[1] A "permitted" warrant is a type of warrant that only requires an officer to serve an individual and release him on a summons. Dkt. 18 at fn. 1. Unlike a "non-permitted" warrant, a "permitted" warrant does not require arrest. *Id.*

drove his cruiser to the scene and jumped out of his vehicle with it still in the drive gear. *Id.* ¶ 35. The car drifted into a retaining wall on the side of the road prompting Johnson to quickly hop back in the car. *Id*. He turned it hard right, and hit the accelerator causing the car to run over Plaintiff. *Id.* Plaintiff sustained multiple injuries from that night "including, but not limited to, laceration of his liver with hemorrhaging, pulmonary contusion, multiple rib fractures, concussion, nasal fracture, avulsion of his left ear, and a right shoulder sprain/strain, as well as mental anguish and distress." *Id.* ¶ 36.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## III. Analysis

### A. Plaintiff Sufficiently Alleges an Excessive Force Violation

Plaintiff claims Defendant Miller subjected him to an unlawful seizure characterized by excessive force when Defendant Miller fired his taser at Plaintiff, striking him. Dkt. 18 ¶¶ 45-52.

3

Defendant Miller argues first that he did not violate Plaintiff's rights and second that he is immune from suit under a theory of qualified immunity. Dkt. 24.

"All claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Conner*, 490 U.S. 386, 386 (1989). The test is an objective test that asks, "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). "In evaluating objective reasonableness, what the officer observed is highly relevant; his subjective beliefs are not." *Bostic v. Rodriguez*, 667 F. Supp. 2d 591, 607 (E.D.N.C. 2009). The factors a court takes into account are (1) the severity of the crime at issue, (2) whether the suspect poses a threat to the safety of the officers or others, and (3) whether the suspect is resisting arrest or attempting to flee arrest. *Graham*, 490 U.S. at 397; *Bellotte v. Edwards*, 629 F.3d 415, 425 (4th Cir. 2011). The test considers whether the totality of the circumstances justify the force used during the seizure. *Jones v. Buchanan*, 325 F.3d 520, 527-28 (4th Cir. 2003).

A court must also consider that officers often make "split second judgements – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397; *Jones*, 325 F.3d at 527.

Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor as this Court must do on a motion to dismiss, the first *Graham* factor weighs in Plaintiff's favor as Plaintiff has not alleged that he was wanted for any crime when the pursuit began. Rather, LPD officers, including Defendant Miller, followed Plaintiff throughout the City in an effort to serve a permitted warrant on Plaintiff. Dkt. 18 ¶ 9. To be sure, Plaintiff's Amended Complaint alleges

that his permitted warrant was for a protective order violation, and while precise circumstances of the violation are not detailed, taking all reasonable inferences as true, the allegations do not establish Plaintiff committed or was suspected of committing any violent crime or other serious crime. Dkt. 18. Thus, the first factor weighs heavily toward Plaintiff. *See Turmon v. Jordan*, 405 F.3d 202, 207-08 (4th Cir. 2005) (illustrating this factor weighs heavily toward plaintiffs when there is no crime).

The second *Graham* factor also favors Plaintiff. Based solely on the allegations in the Amended Complaint, which the Court must assume as true, the pleadings do not indicate that Plaintiff was armed, that he was being violent, or that he presented a threat to the officers' or public's safety. Dkt. 18. He was traveling on a horse between ten to fifteen miles per hour and, at most, briefly accelerated to a speed of twenty-five miles per hour. *Id*. ¶¶ 13, 17, 24, 26, 30. Taking the facts alleged as true and drawing all reasonable inferences in his favor, the allegations do not suggest that Plaintiff was riding his in a violent or reckless manner. Dkt. 18. Defendant Miller argues that riding a horse at night through traffic poses enough danger to weigh this factor in his favor. Dkt. 24 at 7. However, the Court finds this argument unpersuasive at this point in the proceedings since such an inference in Defendant's favor is not permitted. Further finding of facts may support a different conclusion but based on the facts alleged, this factor favors Plaintiff.

Lastly, the third *Graham* factor asks whether Plaintiff was "resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 397. Plaintiff does not suggest he was resisting arrest, but merely avoiding service of a summons. Dkt. 18. Plaintiff argues that he was also not fleeing arrest because there was no arrest to begin with. Dkt. 28. Again, considering the

allegations in the light most favorable to Plaintiff, the *Graham* factors demonstrate a plausible claim of excessive force against Defendant Miller. Dkt. 18.

Additionally, the Fourth Circuit has held that the use of a taser is a serious use of force that should only be deployed in dangerous situations. *See Est. of Armstrong v. Vill. of Pinehurst*, 810 F.3d 82, 92 (4th Cir. 2016); *Meyers v. Balt County*, 713 F.3d 723 (4th Cir. 2013). The Fourth Circuit further held that "[tasers] may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser." *Est. of Armstrong*, 810 F.3d at 909. Here, based on the above analysis of the *Graham* factors and drawing all reasonable inferences in Plaintiff's favor, as the Court must, Plaintiff did not pose a safety risk to the officers or the public to warrant use of a taser.

Thus, Plaintiff sufficiently alleges that Defendant Miller engaged in excessive force and violated Plaintiff's Fourth Amendment rights.

### B. Qualified Immunity

Defendant Miller asserts he is entitled to qualified immunity, Dkt. 24 at 5-7, while Plaintiff argues qualified immunity affords Defendant Miller no defense. Dkt. 28.

Qualified immunity is a tool meant to shield government officials from civil liability so long as their conduct does not violate clearly established constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Defendants may raise the qualified immunity defense at both the motion to dismiss and motion for summary judgment stages of litigation. *Behrens v. Pelletier*, 516 U.S. 299 (1996). While the defense can be presented in a Rule 12(b)(6) motion, "the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009). Without precise facts, it is difficult to determine if a reasonable officer would have

known that he was violating a constitutional right. *B.R. v. F.C.S.B.*, No. 1:19-CV-917, 2023 WL 2464975, at *21 (E.D. Va. Mar. 10, 2023) (citing *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018)). Consequently, a defendant raising a qualified immunity defense at this early stage in the proceedings "faces a formidable hurdle" and "is usually not successful" because a plaintiff must only show a plausible claim. *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (citation omitted). Thus, courts often defer the question of qualified immunity until a later stage in the proceedings. *See Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013) (denying a motion to dismiss without prejudice as to the question of qualified immunity until there is a more developed record when a plaintiff has sufficiently alleged a constitutional violation); *Smith v. Parker,* No. 7:19-CV-00410, 2020 WL 2840160, at **10-11 (W.D. Va. June 1, 2020) (same); *see also Cooper v. Nichols*, No. 1:17-CV-1466, 2019 WL 418856, at *4 (E.D. Va. Feb. 1, 2019) (same).

Plaintiff raises three arguments why Defendant Miller is not entitled to qualified immunity at this stage in the pleading. Dkt. 28. First, he argues that qualified immunity should no longer be recognized as a defense.[2] *Id*. Second, Plaintiff argues that he has sufficiently alleged Defendant Miller violated his constitutional right, and that right was clearly established at the time of the violation. *Id*. Lastly, he argues that qualified immunity should be decided later in the proceedings when there are more facts on the record. *Id*.

Excessive force by police is a clearly established violation of a Fourth Amendment right. *Graham*, 490 U.S. 397-97; *Turmon*, 405 F.3d at 208. Also, the use of a taser except in

---

[2] This argument is without merit as this Court must follow the precedent set by the Supreme Court and the Fourth Circuit, both of which recognize qualified immunity as a defense. *E.g., Harlow*, 457 U.S. at 818; *Saucier v. Katz*, 533 U.S. 194 (2001); *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

7

exceptional circumstances is excessive force. *Est. of Armstrong*, 810 F.3d at 909; *Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016). Taking all the allegations as true, as the Court must do at this stage of the litigation, Plaintiff sufficiently alleges a violation of a clearly established constitutional right. However, Defendant Miller may raise qualified immunity again at later stage in the proceedings. *See Behrens*, 516 U.S. at 299.

Thus, as Plaintiff has sufficiently alleged an excessive force violation and Defendant is not entitled to qualified immunity at this stage in litigation, Defendant Miller's motion to dismiss will be denied as to the excessive force claim.

### C. Plaintiff Sufficiently Alleges State Law Claims

Plaintiff raises two state law claims against Defendant Miller: gross negligence or willful and wanton misconduct and battery. Dkt. 18 ¶¶ 44, 55. Police officers are "legally justified in using reasonable force to execute their lawful duties." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009). "Accordingly, if reasonable force is used by police officers in execution of their lawful duties, they are immune from suit for such actions." *Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009). However, when there is a constitutional violation such as excessive force, then the officer can also be liable for state law claims. *See Burruss v. Riley*, 192 F. Supp. 3d 655, 666 (W.D. Va. 2016). Here, as is often the case, Plaintiff's state law claims rise or fall with his excessive force claim. *See Johnson v. Dep't of Alcoholic Beverage Control*, No. 3:15-CV-00055, 2016 WL 7235836, at *7 (W.D. Va. Dec. 13, 2016) (collecting authority and finding that state law claims rise or fall with the excessive force claim); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *see also Calloway v. Lokey*, 948 F.3d 194, 205 (4th Cir. 2020) (affirming lower court's dismissal of state law claims when Fourth Amendment claim failed). Therefore, the Court will not dismiss the state law claims against Defendant Miller.

## IV. Conclusion

For the reasons stated above, Defendant Miller's Motion to Dismiss will be denied in full.

The Clerk of Court is directed to send this Memorandum Opinion to the parties.

Entered this <u>7th</u> day of August, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE